**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: Michael Patrick Creedon, et al. | No. 24-CV-2671-KSM<br>Civil Action |

**Appellant Michael I. Assad's Brief in Support of Appeal**
**from Order of U.S. Bankruptcy Judge Patricia M. Mayer**
**Dated on June 10, 2024, and Entered on June 10, 2024**

**Table of Contents**

Table of Authorities ................................................................................................... 3

Corporate Disclosure Statement ................................................................................ 6

Jurisdictional Statement ............................................................................................ 6

Issues Presented ........................................................................................................ 6

Standards of Review .................................................................................................. 7

Statement of Pending Judicial Proceedings .............................................................. 7

Statement of Case ...................................................................................................... 8

Summary of Argument ............................................................................................. 11

Argument .................................................................................................................. 12

I.   The Bankruptcy Court may not deny a fee application without hearing. ............... 12

    A.  The Bankruptcy Court violated the Constitution. ........................................... 12

    B.  The Bankruptcy Court violated statutory and common law. ........................... 13

II.  Even if the Bankruptcy Court may deny a fee application without hearing,
     the fees requested here were reasonable and should not have been denied. ........... 17

    A.  Standard fees for comparable cases justify the requested fees. ...................... 17

    B.  The record does not support a finding of unreasonableness. ......................... 19

    C.  The record supports a finding of reasonableness. ......................................... 20

III. The Bankruptcy Court abused its discretion by engaging in meticulous analysis
     of this fee application. .......................................................................................... 22

IV.  Standards of reasonableness must be determined by the free market, not activist judges. ...... 23

Conclusion ................................................................................................................ 24

Certificate of Compliance ........................................................................................ 26

Certificate of Service ............................................................................................... 27

# Table of Authorities

**Cases**

*Chamberlain v. Kula*,
  213 B.R. 729 (B.A.P. 8th Cir. 1997) .................................................................... 13

*Cleveland Board of Education v. Loudermill*,
  470 U.S. 532 (1985) ................................................................................................. 12

*Coffin v. United States*,
  156 U.S. 432 (1895) ................................................................................................. 16

*Granny Goose Foods Inc. v. Teamsters*,
  415 U.S. 423 (1974) ................................................................................................. 12

*In re Busy Beaver Building Centers Inc.*,
  19 F.3d 833 (3d Cir. 1994) ............................................................................... *passim*

*In re Drexel Burnham Lambert Group Inc.*,
  133 B.R. 13 (Bankr. S.D.N.Y. 1991) ................................................................... 19

*In re Eliapo*,
  468 F.3d 592 (9th Cir. 2006) ................................................................................. 13

*In re Energy Future Holdings Corp.*,
  904 F.3d 298 (3d Cir. 2018) ................................................................................. 15

*In re Fleming Companies Inc.*,
  304 B.R. 85 (Bankr. D. Del. 2003) .................................................................. 13, 16

*In re Jefsaba Inc.*,
  172 B.R. 786 (Bankr. E.D. Pa. 1994) ................................................................. 19

*In re Kyung Tae Ko*,
  560 B.R. 245 (Bankr. E.D. Pa. 2016) ................................................................. 18

*In re Lewis*,
  346 B.R. 89 (Bankr. E.D. Pa. 2006) ................................................................... 18

*In re Mushroom Transp. Co.*,
  486 B.R. 148 (Bankr. E.D. Pa 2013) .................................................................. 19

*In re Pettibone Corp.*,
  74 B.R. 293 (Bankr. N.D. Ill. 1987) .................................................................... 14

*In re Top Grade Sausage Inc.*,
    227 F.3d 123 (3d Cir. 2000) ...................................................................13

*In re Waltenberg*,
    2007 WL 1740274 (Bankr. E.D. Pa. June 12, 2007) ................................14

*In re Yovtcheva*,
    590 B.R. 307 (Bankr. E.D. Pa. 2018) .......................................................19

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ..................................................................................12

*McCullough v. Va.*,
    172 U.S. 102 (1898) ..................................................................................15

*Mullane v. Central Hanover Tr. Co.*,
    339 U.S. 306 (1950) ..................................................................................12

*Novartis Pharm. Corp. v. Adesanya*,
    645 B.R. 733 (E.D. Pa. 2022) .................................................................. 6

*Posadas de Puerto Rico Inc. v. Radin*,
    856 F.2d 399 (1st Cir. 1988) ....................................................................13

*Shareholders v. Sound Radio*,
    109 F.3d 873 (3d Cir. 1997) ............................................................... 13, 14

*Trs. of Gen. Assembly of Lord Jesus Christ of Apostolic Faith Inc. v. Patterson*,
    527 F. Supp. 3d 722 (E.D. Pa. 2021) .......................................................12

*United States v. Taylor*,
    487 U.S. 326 (1988) ..................................................................................21

*Zolfo, Cooper Co. v. Sunbeam-Oster Co.*,
    50 F.3d 253 (3d Cir. 1995) ....................................................................... 6

**Statutes**

11 U.S.C. § 1325 ...............................................................................................19

11 U.S.C. § 330 ...........................................................................................13, 20

28 U.S.C. § 158 .................................................................................................. 5

**Rules**

Fed. R. Bankr. P. 8002 ................................................................................................. 5

Local Bankr. Form 2016-3B ........................................................................................18

Local Bankr. R. 2016-3 ...........................................................................................17, 18

## Corporate Disclosure Statement

The Appellant makes this appeal in connection with his employment as an associate attorney with Cibik Law, P.C., a private, non-governmental professional corporation organized under Pennsylvania law. Cibik Law does not have any parent corporation and no publicly held corporation that owns 10% or more of its stock.

## Jurisdictional Statement

The United States District Court for the Eastern District of Pennsylvania has jurisdiction over this appeal under 28 U.S.C. § 158(a), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. The Bankruptcy Court's Order Partially Denying the Application for Compensation, entered on June 10, 2024, is a final order for purposes of appeal under 28 U.S.C. § 158(a)(1) because it conclusively determines the compensation amount allowed to the debtor's counsel, affecting substantial rights. The Appellant filed a Notice of Appeal on June 15, 2024, within the fourteen-day period prescribed by Fed. R. Bankr. P. 8002(a), rendering the appeal timely.

## Issues Presented

1. Whether the Bankruptcy Court erred in finding that the full amount of compensation requested by the Appellant was not reasonable.

2. Whether the Bankruptcy Court erred by awarding the Appellant less than the requested amount of compensation when property of the estate could no longer inure to the benefit of unsecured creditors.

3. Whether the Bankruptcy Court erred by awarding the Appellant less than the requested amount of compensation without holding an evidentiary hearing.

4. Whether the Bankruptcy Court violated the U.S. Constitution by awarding the Appellant less than the requested amount of compensation without notice and hearing notwithstanding the Appellant's written notice that he did not consent to the entry of a reduced award without notice and hearing.

## Standards of Review

The District Court reviews the Bankruptcy Court using the same standards as would the Third Circuit.[1] That means legal determinations are reviewed *de novo*, factual findings are reviewed for clear error, and exercises of discretion are reviewed for abuse.[2] Clear error means that a finding is "completely devoid of credible evidentiary basis or bear[s] no rational relationship to the supporting data."[3] Discretion is abused when "[a] judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous."[4]

## Statement of Pending Judicial Proceedings

No appeals have previously arisen from the Debtors' bankruptcy case in the District Court or the Court of Appeals, no appeals are currently pending in the District Court or the Court of Appeals from the Debtors' bankruptcy case, the matter on appeal has not been before the District

---

[1] *Novartis Pharm. Corp. v. Adesanya*, 645 B.R. 733, 751 (E.D. Pa. 2022) (Marston, J.).

[2] *Id.*

[3] *Id.*

[4] *Zolfo, Cooper Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995) (internal citation marks omitted).

Court or the Court of Appeals previously, and the Appellant is unaware of any other pending judicial proceeding in a federal or state court that presents issues which, if decided, may be relevant to the issues presented by the Appellant's appeal and are not duplicative of cases cited in the body of the Appellant's brief.

### Statement of Case

Debtors Michael Patrick Creedon and Regina Anne Creedon filed a Chapter 13 bankruptcy case on July 25, 2023, in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania. (Record at 1.) The Debtors were represented by attorneys Michael A. Cibik and Appellant Michael I. Assad of Cibik Law, P.C. (Record at 1.) This filing followed a prior bankruptcy case dismissed on June 28, 2023, because the Debtors failed to make plan payments. (Record at 68.) Through the Appellant, the Debtors filed the necessary schedules, statements, and a proposed chapter 13 plan. (Record at 3.) The main goals of the filing were to restructure the Debtors' debts, prevent the foreclosure of their home, and ensure full payment to unsecured creditors. (Record at 61-65.)

Given the Debtors' recent bankruptcy history, the Appellant promptly filed a motion to extend the automatic stay under 11 U.S.C. § 362(c)(3)(B). (Record at 68-69.) The Bankruptcy Court granted the motion, thereby maintaining the automatic stay and allowing the Debtors to continue their efforts toward reorganization. (Record at 4.) On August 17, 2023, the Debtors proposed their initial Chapter 13 plan, which outlined a payment schedule of $3,980 per month over 60 months. (Record at 61.) The Appellant also filed a disclosure of compensation, indicating that the firm agreed to accept $4,725 for the legal services provided in connection with the case. (Record at 56-57.)

Wells Fargo Bank, the holder of the mortgage on the Debtors' residence, objected to the plan, citing concerns about its feasibility and compliance with the requirements of the Bankruptcy Code. (Record at 71-72.) Similarly, the Chapter 13 Trustee moved to dismiss the case on the grounds that the plan was not feasible and that creditors were being prejudiced by the delay in filing a feasible plan. (Record at 111.)

Around the same time, Wells Fargo filed a motion for relief from the automatic stay, asserting that the Debtors had defaulted on their post-petition mortgage payments. (Record at 75-78.) Wells Fargo sought permission to proceed with foreclosure on the Debtors' residence. (Record at 81.) In response to this motion, the Appellant negotiated directly with Wells Fargo, resulting in a stipulation that the Bankruptcy Court approved on January 22, 2024. (Record at 114-116.) The stipulation maintained the automatic stay and allowed the Debtors to include some post-petition mortgage arrears in their plan, in return for promising to remain current on mortgage payments going forward. (*Id.*)

On January 23, 2024, the Debtors, through the Appellant, submitted a First Amended Chapter 13 Plan, which complied with the stipulation and sought to resolve the concerns raised by both Wells Fargo and the Trustee. (Record at 118-122.) The Appellant also filed an amended disclosure of compensation, reflecting that the firm agreed to accept $5,725 to account for the additional work involved in the case. (Record at 147-148.) To support the plan's feasibility, the Debtors filed an amended Schedule J on February 8, 2024, providing a detailed account of their revised expenses and demonstrating their ability to make the plan payments. (Record at 125-128.) The Appellant also submitted a Pre-Confirmation Certification of Compliance with Post-Petition

Obligations, asserting that the Debtors were current on their obligations as required by the Bankruptcy Code. (Record at 124.)

Through the Appellant, the Debtors later filed a Second Amended Chapter 13 Plan on February 12, 2024, incorporating further changes aimed at satisfying the concerns of Wells Fargo and the trustee. (Record at 129-133.) As a result of the amended plan, Wells Fargo withdrew its objection to confirmation, and the Trustee withdrew its motion to dismiss. (Record at 7, 135.) The plan was now ready for confirmation.

Unfortunately, the Debtors did not remain current on their payments to the trustee or the mortgage company. (Record at 7, 140.) Consequently, the Bankruptcy Court denied confirmation of the plan. (Record at 139.) Following the denial of confirmation, the trustee filed another motion to dismiss the case. (Record at 140.) On May 7, 2024, the Bankruptcy Court dismissed the case but retained jurisdiction over the plan payments made to the trustee by the Debtors so that the Appellant could file an application for compensation. (Record at 142.)

The Appellant applied for compensation on May 21, 2024, requesting $5,725 for the legal services rendered throughout the case. (Record at 143-151.) This amount reflected the Appellant's efforts in preparing and filing the initial and amended Chapter 13 plans, negotiating with creditors, extending the automatic stay, and addressing the objections and motions that arose during the case. (*Id.*)

The fee application detailed the substantial work undertaken by the Appellant, including the extensive time and resources devoted to defending against Wells Fargo's objection, revising the Debtors' plans to comply with the Bankruptcy Code, and seeking confirmation of the plan. (*Id.*) In

the application, the Appellant stated that he did not consent to the entry of a reduced award without further notice or hearing. (*Id.*)

No objections were filed in response to the fee application, and the Appellant submitted a Certificate of No Response on June 5, 2024, indicating that the application was uncontested. (Record at 152.) Without further notice or hearing, the Bankruptcy Court issued an order on June 10, 2024, partially granting and partially denying the fee application. (Record at 153-155.) The Bankruptcy Court awarded the Appellant $4,300 in fees, a reduction from the $5,725 requested. (*Id.*) The Bankruptcy Court found that the requested fees were unreasonable because the fee application did not include sufficiently detailed time records and the Chapter 13 plan was not confirmed. (*Id.*)

On June 15, 2024, the Appellant filed a notice of appeal, challenging the Bankruptcy Court's order because the fees requested were reasonable and that the Appellant was entitled to a hearing before entry of the order. (Record at 158.) Concurrently with the notice of appeal, the Appellant moved for stay pending appeal on June 16, 2024. (Record at 8.) The motion sought to stay the effect of the Bankruptcy Court's order reducing the fee award while the appeal was pending. (Record at 161.) The motion was granted. (*Id.*) The Bankruptcy Court then timely filed a written opinion detailing its rationale for the fee reduction and its decision to not hold a hearing. (Record at 175.)

## Summary of Argument

The Bankruptcy Court's impulsive decision to deny the fee application without a hearing violated both constitutional and statutory law, undermining fundamental principles of due process and judicial fairness. The Bankruptcy Court contravened established legal standards requiring notice and hearing before depriving individuals of significant property interests and misapplied the

standards for determining the reasonableness of fees. Even if the procedural errors are overlooked, the requested fees were reasonable and should not have been denied. The Bankruptcy Court's meticulous scrutiny of the fee application, coupled with its failure to adhere to market-driven principles of fee determination, constitutes an abuse of discretion that demands correction. To restore justice and ensure that legal rights are properly safeguarded, this decision must be vacated and the proper standards be reaffirmed.

**Argument**

**I.      The Bankruptcy Court may not deny a fee application without hearing.**

Individuals have the right to be heard before being deprived of any significant property interest. The Bankruptcy Court violated both Constitutional and statutory law by denying due process and failing to provide a fair hearing before disallowing compensation. Its reliance on misinterpretations of precedent illustrate a misunderstanding of due process and an applicant's right to be heard.

**A.      The Bankruptcy Court violated the Constitution.**

Notice and hearing is the core of the Constitutional right of due process.[5] It requires "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."[6] Due process is meaningless unless someone "can choose for himself whether to appear or default, acquiesce or contest."[7] Granting relief before hearing is only appropriate in extreme

---

[5] *Trs. of Gen. Assembly of Lord Jesus Christ of Apostolic Faith Inc. v. Patterson*, 527 F. Supp. 3d 722, 765-66 (E.D. Pa. 2021) (Marston, J.).

[6] *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985) (cleaned up).

[7] *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950).

circumstances and requires clearing a high bar. For example, temporary restraining orders have stringent requirements,[8] and preliminary injunctions are considered "an extraordinary and drastic remedy."[9] But even then, the relief is temporary and comes *before* hearing and the entry of a final order. Granting relief without hearing is only appropriate where a court faces only questions of law, and a hearing would not "enhance its ability to decide the issue."[10] A fee applicant is robbed of due process if it is not given time to correct the record or request a hearing before the entry of a final order.[11] With this well-established jurisprudence, the Bankruptcy Court's assertion that it has the authority to enter a final order on a fee application without hearing is preposterous.

**B.      The Bankruptcy Court violated statutory and common law.**

A court can skip a hearing on a fee application only if there is no objection and the court allows the full amount requested.[12]  There is "no question" that an applicant is entitled to a hearing before a court disallows compensation.[13] This fundamental right is enshrined in 11 U.S.C. § 330(a)[14]

---

[8] *Granny Goose Foods Inc. v. Teamsters*, 415 U.S. 423, 439 (1974).

[9] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

[10] *Posadas de Puerto Rico Inc. v. Radin*, 856 F.2d 399, 400-01 (1st Cir. 1988).

[11] *See In re Top Grade Sausage Inc.*, 227 F.3d 123, 131 (3d Cir. 2000) (citing *In re Busy Beaver Building Centers Inc.*, 19 F.3d 833, 838 (3d Cir. 1994)); *In re Fleming Companies Inc.*, 304 B.R. 85, 90 (Bankr. D. Del. 2003).

[12] *In re Eliapo*, 468 F.3d 592, 602-03 (9th Cir. 2006) (citing *Busy Beaver*, 19 F.3d at 846, n. 16).

[13] *Chamberlain v. Kula*, 213 B.R. 729, 742 (B.A.P. 8th Cir. 1997) (citing *Busy Beaver*, 19 F.3d 833 at 846 n.16).

[14] *Shareholders v. Sound Radio*, 109 F.3d 873, 878 (3d Cir. 1997) (citing *Busy Beaver*, 19 F.3d at 845).

and upheld by the Third Circuit's straightforward directive: a court, when disallowing fees, "simulates the role of an adversary" and must resolve any disputed matters at a fair hearing[15] *before* the entry of a final order.[16] A court's failure to provide this opportunity by disallowing fees "without permitting [an applicant] the opportunity for a hearing to oppose the reduction or to establish the reasonableness of his compensation," is an absolute grounds for remand.[17]

The Bankruptcy Court defends its failure to schedule a hearing by citing *In re Waltenberg*, a decision that grossly misinterprets *Busy Beaver*'s summary of *In re Pettibone Corp* by erroneously concluding that a fee applicant's due process rights can be satisfied by "rely[ing] on the general standards for reconsideration of an order."[18] But *Pettibone* holds that "ordinary standards for reconsideration apply when a fee applicant seeks to supplement the fee application **after a full hearing**."[19] The context of *Busy Beaver* shows that *Pettibone* supports a court's discretion in allowing or disallowing supplementation after a hearing, not the substitution of reconsideration for due process.[20] In fact, *Pettibone* directly contradicts *Waltenberg* by establishing that the standard of reconsideration for a fee order is the same as any other, and "cannot in any case be employed as a

---

[15] *Busy Beaver*, 19 F.3d at 846 n.16 (quotation marks omitted).

[16] *Id*. at 845 ("[I]f the bankruptcy court plans to disallow certain items of compensation, § 330(a) on its face **first** contemplates the applicant's right to a hearing. . . ." (emphasis added)).

[17] *Shareholders*, 109 F.3d at 878.

[18] *In re Waltenberg*, 2007 WL 1740274, at *10-11 (Bankr. E.D. Pa. June 12, 2007).

[19] *Busy Beaver*, 19 F.3d at 846 (citing *In re Pettibone Corp.*, 74 B.R. 293, 300-01 (Bankr. N.D. Ill. 1987) (emphasis added).

[20] *Id*. at 845-46.

vehicle to introduce new evidence that could have been adduced during pendency of the original matter."[21] To that end, neither *Waltenberg* nor the Bankruptcy Court explain how their proposed use of reconsideration motions track with the Third Circuit's dicta that such motions must be granted only upon a showing of "an intervening change in the controlling law, the availability of new evidence that was not available when the court made its initial decision, or the need to correct a clear error of law or fact or to prevent manifest injustice."[22]

Local Bankr. R. 9014-3 mimics *Waltenberg*'s flawed procedure of due process through reconsideration. Even if reconsideration motions could be stretched this way, they cannot provide due process because they cannot prevent the irreparable harm of delayed relief. Consider the scenario where an order is denied on day one, the funds are refunded to the debtor on day two, and then the applicant moves to reconsider on day three. At the reconsideration hearing, the court agrees the applicant has met its burden and grants the application in full. Yet because the trustee already refunded the money, the applicant cannot be made whole.[23] Like *Waltenberg*, Local Bankr. R. 9014-3 is unconstitutional and inconsistent with controlling statutory and common law. The Constitution always overrides statutes and rules,[24] and the Bankruptcy Court should have known better.

---

[21] *Pettibone*, 74 B.R. at 298.

[22] *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311 (3d Cir. 2018) (cleaned up).

[23] By granting the motion to stay pending appeal, the Bankruptcy Court acknowledged this possibility. *See* Record at 161.

[24] *McCullough v. Va.*, 172 U.S. 102, 112 (1898).

The Bankruptcy Court's practical reasoning also falls short. It complains that providing hearings on deficient fee applications would be a burden[25] and cites the Third Circuit's acknowledgment that hearings on fee applications can swell a court's calendar as justification for not hearing fee applications.[26] But the Third Circuit immediately follows its acknowledgment of swollen calendars with a declaration that due process still requires allowing applicants to be heard.[27]

While judicial efficiency is important, it cannot come at the expense of constitutional rights. The Bankruptcy Court's concern over the potential burden of holding hearings on deficient fee applications does not justify depriving applicants of their right to due process. The Constitution demands that every individual, regardless of the court's workload, be given a fair opportunity to present their case. Sometimes, upholding the Constitution requires tolerating some level of underenforcement.[28] If the Bankruptcy Court faces eleven deficient fee applications but only has the bandwidth to provide due process for one, it must pick one and let the other ten slide. It cannot simply deny applicants their rights. Courts must give good-faith applicants a chance to "amend the fee application to remedy deficiencies such as lumping or insufficient detail."[29] This is not only a

---

[25] Opinion at 12 (The Bankruptcy Court's opinion is included in the Record at 164-175).

[26] Opinion at 11.

[27] In context, the swollen calendars remark suggests that courts give applicants an opportunity to supplement applications before determining that a hearing is necessary; it does not expressly or implicitly enable courts to disallow compensation without hearing. *Busy Beaver*, 19 F.3d at 845-46.

[28] *See Coffin v. United States*, 156 U.S. 432, 456 (1895) ("[T]he law holds that it is better [to let] ten guilty persons escape than [to let] one innocent suffer.").

[29] *In re Fleming Companies Inc.*, 304 B.R. 85, 90 (Bankr. D. Del. 2003) (citing *Busy Beaver*, 19 F.3d at 846).

matter of fairness, but also of judicial efficiency. By allowing amendments, courts can resolve fee disputes without the need for multiple rounds of motions and appeals. The Bankruptcy Court's refusal to provide a hearing shows disregard for due process, efficient adjudication, and basic fairness.

**II.    Even if the Bankruptcy Court may deny a fee application without hearing, the fees requested here were reasonable and should not have been denied.**

The Bankruptcy Court reached the wrong factual conclusion, regardless of whether it followed the correct procedure. In assessing the reasonableness of fees, the Bankruptcy Court must balance objective standards with judicial discretion. The fee serves as a baseline, ensuring that attorneys are compensated fairly for standard services in a typical case. But when an attorney provides services that go beyond the norm — addressing complex issues, engaging in critical litigation, or achieving substantial results — those services must be valued accordingly. The Appellant's efforts in this case, which included extending the automatic stay and defending against motions for relief, are precisely the kind of services that justify an award above the baseline fee. By focusing narrowly on time spent rather than the value and impact of these services, the Bankruptcy Court failed to properly apply the standards for determining reasonableness, leading to an unjustified reduction in fees.

**A.    Standard fees for comparable cases justify the requested fees.**

The best way to determine the value of a chapter 13 bankruptcy case is to look to the presumptively reasonable fee in this district for providing pre-confirmation services. If a reorganization plan is confirmed, a debtor's attorney is entitled to the presumptively reasonable

fee, without showing time records.[30] Although that process does not apply here because the case was dismissed before confirmation of the plan, the presumptively reasonable fee is an objective value of baseline services in the average case.[31]

The presumptively reasonable fee is $4,725 if the debtor is below-median, and $5,875 if the debtor is above-median.[32] The presumptively reasonable fee includes "the initial consultation [and] providing before confirmation . . . the customary services of counseling and representing [a debtor] in connection with the analysis of the financial situation; preparation, review and filing with the court of all required documents; correspondence, telephone conversations and miscellaneous contact with creditors, the trustee, attorneys and other parties in interest; [and] preparation for and attendance at [the meeting of creditors]."[33] The fee does not include representing a debtor in connection with curing a residential mortgage default, automatic stay litigation, or an operating business.[34]

---

[30] Local Bankr. R. 2016-3(a)(1).

[31] *See In re Kyung Tae Ko*, 560 B.R. 245, 253 n.10 (Bankr. E.D. Pa. 2016); *In re Lewis*, 346 B.R. 89, 97 (Bankr. E.D. Pa. 2006).

[32] Local Bankr. R. 2016-3(a)(1).

[33] *See* Local Bankr. Form 2016-3B (No local rule describes with particularity the services that are included in the no-look fee, but this fee application form lumps these services together, which strongly suggests that they are considered the standard services in a bankruptcy case, and thus included in the no-look fee.).

[34] *Id.* (The form lists each of these services (among others) separately, which strongly suggests that they are not standard services included in the no-look fee.); *Kyung Tae Ko*, 560 B.R. at 253 (Resolution of a stay relief motion "warrant[s] the allowance of compensation above that of an 'average' chapter 13 case.").

**B.**     **The record does not support a finding of unreasonableness.**

Despite the Appellant providing all necessary services for a confirmable plan, the Bankruptcy Court improperly reduced fees because the plan was not confirmed.[35] A court cannot determine the reasonableness of fees through the lens of hindsight.[36] Fees are allowable if the services provided were "reasonably likely to yield a benefit to the estate at the time they were provided," even if ultimately unsuccessful.[37] Here, the Appellant fulfilled all necessary obligations to help the Debtors present a confirmable plan. A plan must be confirmed if it: (a) complies with title 11, (b) is proposed in good faith, (c) pays unsecured creditors at least as much as they would under Chapter 7, (d) is accepted by all secured creditors, (e) stems from a good-faith petition, (f) has an accompanying paid filing fee, (g) ensures post-petition domestic support obligations are met, (h) is filed with all required tax returns for the preceding four years, and (i) demonstrates the debtor's ability to make plan payments.[38]

The Appellant ensured the Debtors' plan met these prerequisites. The plan was proposed in good faith, complied with title 11, provided full payment to unsecured creditors, and secured acceptance from all secured creditors. The Debtors filed in good faith, paid the filing fee, satisfied

_____

[35] Opinion at 7-8 ("At bottom, I find a bill of nearly $6,000.00 for a routine bankruptcy in which a plan of reorganization was not confirmed to be high. . . .").

[36] *In re Jefsaba Inc.*, 172 B.R. 786, 799 (Bankr. E.D. Pa. 1994) (fees are allowable if there was a reasonable chance of success that justified the cost); *In re Drexel Burnham Lambert Group Inc.*, 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991) ("The Court's benefit of '20/20 hindsight' should not penalize professionals.").

[37] *In re Yovtcheva*, 590 B.R. 307, 315 (Bankr. E.D. Pa. 2018) (citing *In re Mushroom Transp. Co.*, 486 B.R. 148, 163 (Bankr. E.D. Pa 2013)).

[38] 11 U.S.C. § 1325.

post-petition domestic support obligations, submitted all necessary tax returns, and demonstrated the ability to make payments via Schedules I and J. Thus, the plan was confirmable. But confirmation was denied due to the Debtors' non-compliance with the plan terms, specifically their failure to remain current on plan payments to the trustee. For that reason, the Bankruptcy Court erred in determining fee reasonableness based on the plan's ultimate disposition because the Appellant provided all necessary services to prosecute confirmation of the plan, and the reason the plan was not confirmed was outside of his control.

**C.     The record supports a finding of reasonableness.**

In determining whether a fee is reasonable, a court must consider: "(i) the nature of the services, (ii) the extent of the services, (iii) the value of the services, (iv) the time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases."[39] But the Bankruptcy Court's opinion focuses almost entirely on the time spent on the services, with little consideration of the extent or value of those services.

The Bankruptcy Court stated that its decision was guided by a review of the record and its experience as a consumer bankruptcy attorney. But it offers little explanation for how that experience informed its conclusion. A reasonable, experienced bankruptcy attorney would consider not just the time spent, but also the significance and impact of those services, and how the attorney's efforts contributed to the outcome of the case.

As outlined above, the Appellant provided all services necessary to prosecute confirmation of the plan. The policy of this district values those services at $4,725. The Appellant also

---

[39] *Busy Beaver*, 19 F.3d at 840 (citing 11 U.S.C. § 330(a)).

represented the Debtors in connection with curing a residential mortgage default and handling automatic stay litigation — two services not included in the $4,725 valuation.

A reasonable experienced bankruptcy attorney would recognize that the Appellant provided substantial and high-quality services to the Debtors, resulting in a confirmable plan (despite issues beyond the Appellant's control), and would value those services in line with the presumptively reasonable fee. A reasonable experienced bankruptcy attorney would acknowledge that the Appellant went above and beyond by addressing two critical issues: extending the automatic stay and defending against relief from the stay. The automatic stay is the heart of any bankruptcy case and most cases would be pointless without it. Given its importance, a reasonable, experienced bankruptcy attorney would value the Appellant's efforts to extend the automatic stay and to defend against motions for relief from the stay at no less than $500 each. No reasonable experienced bankruptcy attorney would characterize a case involving multiple instances of automatic stay litigation as "plain vanilla." No reasonable experienced bankruptcy attorney would award *less* than the presumptively reasonable fee when the record shows that an attorney provided *more* services than are required to collect it.

The Bankruptcy Court also defended its impulsive decision by citing its discretion.[40] But a court's discretionary prerogatives are left to its judgment, not its inclination.[41] In exercising that judgment, a court must rely on sound legal principles.[42] The Bankruptcy Court's failure to

---

[40] Opinion at 8 ("[T]his determination was made pursuant to my common sense, experience, and discretion.").

[41] *United States v. Taylor*, 487 U.S. 326, 336 (1988).

[42] *Id.*

Case 2:24-cv-02671-KSM   Document 4   Filed 08/28/24   Page 22 of 27


coherently explain its reasoning suggests that its decision was a punitive measure for the Appellant's failure to provide more detailed time records. Although it was the Appellant's burden to show reasonableness of the requested fees,[43] the absence of adequate time should not automatically result in a fee reduction, especially when the record shows that the attorney provided substantial and necessary services.

### III.   The Bankruptcy Court abused its discretion by engaging in meticulous analysis of this fee application.

The Bankruptcy Court complains that providing due process to the "many" applications it deems deficient would overwhelm its calendar.[44] Aside from being constitutionally repugnant, this complaint is a sign that the Bankruptcy Court habitually abuses its discretion when reviewing fee applications. The Third Circuit has admonished courts to take action only on obvious and significant errors or abuses and to not become "enmeshed in . . . meticulous analysis" of fee applications.[45] But here, the Bankruptcy Court characterizes its reduction as "*de minimus [sic]*."[46] This characterization suggests that the Bankruptcy Court engaged in detailed review of the fee application even though the issue at stake was minor, which contradicts the Third Circuit's guidance.

---

[43] *Busy Beaver*, 19 F.3d at 854.

[44] Opinion at 12.

[45] *See Busy Beaver*, 19 F.3d at 845 ("[T]he reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled.").

[46] Opinion at 12.

The District Court must remand because the purported error or abuse is indeed *de minimis*. The unnecessary scrutiny of a minor issue contradicts the Third Circuit's directive to avoid meticulous analysis of fee applications and undermines the judicial efficiency *Busy Beaver* intends. As the Bankruptcy Court acknowledges, the cumulative effect of de minimis reductions can slash a bankruptcy attorney's income.[47] That is precisely why *Busy Beaver* demands that courts give attorneys leeway and not become enmeshed in fee applications.[48] Reversing this decision will reinforce the principle that courts should only intervene in fee matters when abuses or errors are clear and significant. This will preserve the integrity of the fee determination process and ensure that minor issues do not trigger excessive judicial involvement.

**IV.     Standards of reasonableness must be determined by the free market, not activist judges.**

The Bankruptcy Court's role when reviewing fee applications is to prevent abuse, not to save debtors money or to set a standard of reasonableness. In the Third Circuit, the reasonableness of fees is determined by the free-market principles outlined in *Busy Beaver*. In a healthy market, fees reflect the expertise, time, and results provided by attorneys. But the Bankruptcy Court seems to think that its role is to keep fees at a bargain level.[49] That kind of judicial activism poisons the market's ability to set the value of legal services because it artificially suppresses fees, discourages competition, and potentially reduces the quality of legal representation available to debtors. By

---

[47] Opinion at 12.

[48] *See Busy Beaver*, 19 F.3d at 853.

[49] Opinion at 12 ("[S]uch process allows the court . . . to perform its duty . . . to balance professionals′ need and right to get paid with the protection of debtors′ scarce funds.").

intervening to lower fees based on subjective standards, the court disrupts the natural balance of supply and demand, undermining the free-market principles that ensure fair compensation for legal services.

A court's review of a fee application is justified on the theory that debtors are generally unlikely to object because "the fees will frequently be derived from its creditors' award rather than [their] own assets" and they "may be in no position to make an objective judgment as to the value of the legal services involved."[50] But this case is different. The fees would directly reduce the Debtors' recovery, giving them a clear incentive to monitor legal costs. Moreover, the fact that one of the Debtors is an attorney means they possess the legal knowledge to critically assess the services provided. Under these circumstances, the Bankruptcy Court's need to scrutinize the fee application was diminished. The Debtors were well-positioned to assess the reasonableness of the fees and raise any objections they deemed appropriate. By ignoring the Debtors' alignment of interests and legal expertise, the Bankruptcy Court demonstrates a rigid approach to fee review, which fails to recognize the specific circumstances of each case.

## Conclusion

We all had that teacher in elementary school who insisted that we show our work in math class. If we simply wrote that the answer to seven plus five minus four is eight without showing our work, the teacher might have given us a lower grade because we did not explain how we arrived at our answer, even though we wrote the correct answer.[51] Similarly, the Appellant's fee application,

---

[50] *Busy Beaver*, 19 F.3d at 843.

[51] Add seven and five to get twelve, then subtract four.

while stating a reasonable request for $5,725, was not detailed enough to explain how he arrived at that amount. But unlike an elementary school teacher, the Bankruptcy Court has a duty to provide an opportunity for the Appellant to show his work before making a final determination.

Even if failing to provide that opportunity was within constitutional bounds, the record supports the reasonableness of the requested fee, and the Bankruptcy Court should have reached that conclusion. Instead, it impulsively imposed a punitive fee reduction, largely because the Appellant did not show his work. While punitive grading might be useful in teaching students the proper way to solve math problems, the Bankruptcy Court's role is different. It has a duty to make decisions consistent with the Constitution and Congressional intent, and it failed to do so.

For these reasons, the District Court must vacate the Bankruptcy Court's order dated June 10, 2024, and remand the case with instructions to enter a fee award in the amount of $5,725. The District Court must also declare that Local Bankr. R. 9014-3 violates the Fifth Amendment.

Date: August 28, 2024

CIBIK LAW, P.C.
*Attorney for Appellant*

By: _____

Michael I. Assad (#330937)
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-735-1060
help@cibiklaw.com

**Certificate of Compliance**

I certify that this document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 4,970 words.

I also certify that this document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.86 in 12-point Equity Text A.

Date: August 28, 2024

Michael I. Assad

26

**Certificate of Service**

I certify that on this date I caused this document to be served on all parties registered to receive notices through the CM/ECF system in this case, and on the following parties by first class mail, postage prepaid:

Michael Patrick Creedon
4 Saljon Ct
Maple Glen, PA 19002-3012

Regina Anne Creedon
4 Saljon Ct
Maple Glen, PA 19002-3012

Hon. Patricia M. Mayer
U.S. Bankruptcy Court
201 Penn Street, Suite 103
Reading, PA 19601

Timothy B. McGrath
U.S. Bankruptcy Court
900 Market St
Philadelphia, PA 19107

Kenneth E. West
Office of the Chapter 13 Trustee
1234 Market St
Philadelphia, PA 19107

Dave P. Adams
Office of the United States Trustee
900 Market St
Philadelphia, PA 19107

Date: August 28, 2024

_____
Michael I. Assad